OF THE STATE OF ARKANSAS. **557**

TERM, 1861.]        Cunningham et al. vs. Trapnall et al.

CUNNINGHAM ET AL. VS. TRAPNALL ET AL.

The complainants and defendants, in a suit for title to town lots, which had been decided in favor of the complainants, entered into a compromise agreement that the complainants were to accept the purchase money and interest for all lots sold by the defendants and not purchased back; and that where the defendants were in a condition to surrender up the lots, the complainants were to re-ceive the lots and improvements in lieu of rents, etc.: *Held*, in a suit by the complainants against a party who had been in possession of lots, under a vendee of the defendants, which had been purchased back by them and surrender-ed to the complainants, that by the compromise agreement the complainants had abandoned all claim, if any they had, to rents accrued and for waste committed before the date of the agreement.

*Appeal from Pulaski Chancery Court.*

Hon. H. F. FAIRCHILD, Chancellor.

GARLAND, for appellants.

WATKINS & GALLAGHER, for appellees.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was an original bill, in the nature of a bill of revivor, and to carry into execution the final decree, in the case of *Cunningham vs. Ashley et al.*, which has several times been before this court, and is reported in 7 *Eng.*, 296; 13 *Ark.*, 654; 16 *Ark.*, 168 *and* 181.

The bill, in the case now before us, was brought by the heirs and legal representatives of Matthew Cunningham, against Martha F. Trapnall, in her own right, and as administratrix of her deceased husband, Frederick W. Trapnall, and guardian of her minor daughter, Mary R. Trapnall.

The object of the bill was to make Mrs. Trapnall account for rents received by her deceased husband, and herself, from a portion of the property in litigation in the original suit, and to charge her with waste, etc.

The facts material to be stated are as follows:

On the 7th January, 1838, Ashley and Beebe entered the south-east quarter of section 3, township 1 north, range 12 west, and having caused it to be laid off into lots and blocks, as part of the city of Little Rock, sold to Wm. Brown block No. 73, September 25th, 1839. On the 27th January, 1841, Matthew Cunningham, claiming a pre-emption right to the land, commenced the suit above referred to against Ashley and Beebe, etc., for the purpose of establishing his claim, and having the title purchased by them of the government vested in him; and the result of the suit was, that his heirs, who succeeded him in the litigation, obtained a decree for the east half of the land, (which included the block purchased by Brown of Ashley and Beebe) with a declaration of law by the court that they were entitled to rents, etc., as may be seen from the history of the case as stated in the reports cited above, and as recited in the bill now before us.

In the meantime, while this litigation was going on, Brown, who was not made a party, erected a brick dwelling, and out-houses, upon block No. 73. On the 21st April, 1845, Frederick W. Trapnall purchased ten of the lots embraced in the block, under executions against Brown, received the sheriff's deeds therefor, obtained possession of the property, including the dwelling and out-houses, and availed himself of the rents, etc., for a number of years. In July, 1851, Brown commenced a suit in chancery against Trapnall for the recovery of the lots, on the ground that he had purchased them upon an agreement to hold them until the judgments under which he purchased, and which he controlled, were paid by the rents, etc., etc., and then to reconvey them to Brown. Trapnall died pending the suit; Mrs. Trapnall, his administratrix, was substituted, and on the 27th December, 1854, Brown obtained a decree against her

for the lots, in which she was charged with and accounted for the value of the rents of the property from the time her husband obtained possession of it, to the date of the decree. She appealed from the decree, and it was affirmed by this court in July, 1857. (See *Trapnall adx. vs. Brown*, 19 *Ark.*, 39.) In the meantime, on the 24th January, 1854, the brick dwelling on the lots was burned down.

On the 12th October, 1853, while the suit between Brown and Trapnall was pending in the Circuit Court, Ashley's executrix (he having died,) purchased the lots of Brown.

On the 20th April, 1855, Cunningham's heirs obtained a decree in the Circuit Court vesting in them the title to the east half of the quarter section above described, (including the Brown property,) and awarding them a writ of possession against Ashley's representatives, Beebe, etc., and persons holding any portion of the land as their tenants, lessees, etc., but not as purchasers, etc.

On the 21st of September, 1855, and while the appeal was pending in the Supreme Court in the Brown and Trapnall suit, the parties to the Cunningham suit entered into a compromise agreement, as follows:

"LITTLE ROCK, September 21st, 1855.

Memorandum of agreement for a settlement of the suit between Robert Cunningham and others, heirs of Matthew Cunningham, and Roswell Beebe, Mary W. W. Ashley and others, made between Mary W. W. Ashley, executrix, etc., and Roswell Beebe, jointly and severally of the one part, and Robert Cunningham and others, heirs of Mathew Cunningham, of the other part:

"1st. All sales (with the exceptions that may be hereinafter made,) of lots on the east half of the south-east quarter of section 3, in township 1 north, range 12 west, made by Chester Ashley and Roswell Beebe jointly, or by Chester Ashley alone, or by Mary W. W. Ashley alone, are to be ratified and confirmed, and the said heirs of Matthew Cunningham will execute the necessary quit claim deed or deeds to the proper party, to

perfect, by relation, the title of all persons who so purchased such lots from said parties in this article named, except such lots as by this settlement are to be surrendered to said heirs.

"2d. Mrs. Mary W. W. Ashley and Roswell Beebe will assume and pay to said heirs of Matthew Cunningham, (with the exceptions hereinafter mentioned,) the purchase money, with six per cent. interest from the time of sale to the present time, on all sales made by Chester Ashley and Roswell Beebe jointly, and will execute their obligations for the aggregate of principal and interest to this time, with Wm. E. Ashley as security, payable in five equal annual installments from this date, with interest on the whole at six per cent. from date, and with stipulations that any portion of said amount not paid at maturity, shall bear interest from maturity, at the rate of ten per cent. per annum until paid.

"3d. Mrs. Mary W. W. Ashley, with Wm. E. Ashley, as security, will in like manner settle and pay the principal and interest on sales made by her after the division between her and Mr. Beebe.

"4th. The heirs of said Matthew Cunningham will make the same arrangement with Mr. Beebe alone, in regard to all lots sold by himself alone, ratifying and confirming such sales, and executing deed of quit claim to him for all lots and parts of lots so sold, upon his assuming in like manner to pay the principal and interest of the purchase money, and giving like obligation for the amount, bearing like interest, both before and after maturity, with satisfactory security, either real or personal. But whether he does so or not, the preceding articles shall have full effect, and in no wise depend upon performance of said Roswell Beebe, the said heirs intending and agreeing to look to him, and to the property sold by him, alone, for satisfaction, so far as that part of the property decreed to them is concerned.

"5th. In all cases where Mrs. Ashley, executrix, or individually, or Wm. E. Ashley, has acquired title to lots heretofore sold and warranted by said Chester Ashley and Roswell Beebe,

or Mary W. W. Ashley alone, (including the Whitaker and Clifton blocks), the heirs will accept such lots or blocks under the decree in their favor, *with any improvements that may be on them*, in lieu of such purchase money with interest, as if such lots and blocks had never been sold;—excepting be it understood, the fractional lots sold to Albert Pike, who having purchased the same of Peter Hanger for the same amount due him by said Ashley and Beebe on their warranty, and paid him therefor, and said Wm. E. Ashley, for the executrix, having purchased the title so claimed by him, and having paid said Albert Pike $2,500 towards the amount due him on the warranty, Mrs. Ashley will settle the unpaid remainder due on such warranty with said Albert Pike himself:—And in regard to the block sold to Wm. Brown, sr., the heirs will accept it subject to this contingency, that if the title believed to have been acquired by or for Mrs. Ashley should be lost in the pending suit between William Brown, sr., and the heirs and representatives of Frederick W. Trapnall, then the executrix and Roswell Beebe are to settle and pay the purchase money and interest on that block also, within the same time, and in the same manner as in the other cases above provided for.

" 6th. In all cases of sales when fractions are made by the exterior lines of the east half of the south-east quarter of section 3, the quantity outside of the lines is to be ascertained by measurement or satisfactory approximation, and the amount of the purchase money and interest proportional for quantity is to be excluded from the computation in this settlement, the said executrix and Roswell Beebe paying proportionally, for all fractions within the lines of lots sold by them, the proportion of the price of the whole of each lot, that the quantity of the lot within the lines bears to the whole lot.

" 8th. When this agreement is consummated, all *claims for rents and profits* on the one hand, and for the taxes on the other, will be mutually waived and released: all lots and fractions, the purchase money whereof is not settled as above provided, surrendered to said heirs, and their suit in the Chancery Court

36

562 CASES IN THE SUPREME COURT

Cunningham et al. vs. Trapnall et al.    [DECEMBER

of Pulaski county now pending for an account of rents and profits, dismissed as to such rents and profits, (the decree for title not being affected,) the defendants paying the costs : and should this arrangement not be consummated, as to lots sold by Mr. Beebe alone, all *claims for rents*, except the property which fell to him in the division between Mrs. Ashley and himself, *will be waived* and released, so that in any event this settlement will be complete, full and final as far as Mrs. Ashley is concerned, and as to all the lots sold by Ashley and Beebe, or by her alone, or which did not fall to said Beebe upon said division, the taxes for the present year to be paid by the persons to whom the respective lots are assessed.

" 9th. In case Mr. Beebe makes the payments regularly of the annual installments of principal and interest assumed by him of the purchase money of lots sold by him alone, no suit shall be brought by said heirs to dispossess any purchaser or person holding under purchase from him, until he makes default in payment, unless it becomes necessary in order to prevent lapse of time from depriving said heirs of power of enforcing their decree against the said purchasers of lots, or the persons holding the same under them.

" In testimony whereof, the said parties, by their respective counsel, now sign these presents, and declare them binding.

ALBERT PIKE, for the

Heirs of Cunningham.

WATKINS & GALLAGHER,

for Ashley & Beebe."

GEORGE C. WATKINS testified that the mutual inducements to the entering into the above agreement of compromise between himself and Mr. Pike, as counsel for the parties, were : That it was notorious, that, in consequence of the decision in *Cunningham vs. Ashley & Beebe*, much ill feeling existed on the part of those inhabitants of Little Rock, who had bought property in the east half of the south-east quarter of section 3, and made improvements, which they would, or might be re-

OF THE STATE OF ARKANSAS. 563

Term, 1861.]     Cunningham et al. vs. Trapnall et al.

quired to surrender, and that feeling manifested itself in various ways. It was conceeded by Mr. Pike that in order to recover possession of lots so situated, it would be necessary for the heirs of Cunningham to file supplemental bills, on the footing of the decree in that case, against such tenants in possession claiming under purchase from Ashley & Beebe. It was also claimed by deponent as law, that all the purchasers from Ashley & Beebe, who were not parties to the suit of *Cunningham vs. Ashly & Beebe*, who had purchased before the institution of the suit, and who had held adversely, as owners for more than ten years, had acquired a title as against the whole world by length of possession; and Mr. Pike was informed that in the event of supplemental bills being filed, deponent would cause all such persons to be notified, on behalf of Mrs. Ashley and Mr. Beebe, to set up such length of time as a defence, or, in default thereof, to lose their recourse on them as warrantors, or privies, liable thereafter. About one-third of the joint sales of lots made by Ashley & Beebe, were made before Cunningham commenced his suit, in January, 1841.

On the other hand, it was insisted by Mr. Pike that such was not law, as claimed; and that all were liable to a forced surrender who had purchased with a knowledge of Cunningham's claim. Deponent was fearful that Mrs. Ashley and Mr. Beebe might not be able to pay at once, or in a short time, the entire amount of their outstanding warranties, and interest, and as Mr. Pike proposed to forego all claims to all lots sold by Ashley & Beebe, and which they were not in a condition to surrender to the Cunningham heirs, and settle the warranties by taking their obligations for the aggregate amount then due, payable in installments, running through a period of several years, and bearing six per cent. interest, deponent thought it best and safest for his clients to agree to that proposition, and the compromise and adjustment above copied was the result.

Mr. Pike deposed that the inducements which mutually operated upon the counsel of the parties to enter into the compromise agreement, were correctly stated by Mr. Watkins.

It appears that the agreement was carried out by the parties, and obligations and deeds executed as therein stipulated, and that the Cunningham suit was finally disposed of according to the terms of the agreement.

It also appears that on the affirmance of the decree in the case of *Brown vs. Trapnall*, by this court, in July, 1857, the heirs of Cunningham took possession of the Brown lots, under the stipulation of the agreement in relation to them, and have since continued to hold them.

The substance and effect of the agreement is, that Cunningham's heirs were to accept of Ashley & Beebe the purchase money and interest on sales of lots made by them (and not purchased back), instead of proceeding against the purchasers, for the lots, improvements, rents, etc., and taking the risk of limitation by adverse possession, etc. And where Ashley & Beebe were in a condition to surrender up the lots, they were to take them with any improvements that might be upon them, in lieu of rents, etc.

At the time the agreement was made, the Brown lots had been purchased back of him for Mrs. Ashley, but Trapnall had bought them under executions against Brown, and because the suit between them had not finally been determined, it was not known whether Mrs. Ashley was in a condition to surrender them up to the heirs of Cunningham or not. Hence the stipulation in the agreement that they were to accept the purchase money and interest, or the lots and any improvements upon them, in lieu of rent, etc , the one or the other, according to the result of the suit between Brown and Trapnall. The suit was decided, as we have seen, in favor of Brown, and they afterwards took possession of the lots, with the improvements remaining upon them (the dwelling having accidentally been burned down before the date of the agreement) under the terms and stipulations of the agreement.

The Chancellor held, and we think correctly, that, by the agreement, the heirs of Cunningham and complainants in this

suit, waived and abandoned all claim, if any they had, against Trapnall and his administratrix, etc., for ary rent received by them, or by Mrs. Trapnall individually, or for any waste committed by them before the date of the compromise agreement. And the Chancellor further held, that the proof failed to show that Mrs. Trapnall received any rent, or committed any waste, after the date of the agreement, and in this conclusion, upon careful examination of the evidence, we concur.

Neither Mrs. Trapnall, nor her husband, nor Brown, under whom he held the lots, and to whom his estate was compelled by decree, to account for rents, was a party to the Cunningham suit; but whether Mrs. Trapnall, in her representative capacity, or individually, and her infant daughter, were properly made parties to the present bill, to execute a decree to which they were strangers, we need not decide. Nor need we decide whether the demand for rent, etc., sought by the bill to be enforced against the estate of Trapnall, was barred by the statute of non-claim.

The point above decided disposes of the case; and the decree of the Chancellor must be affirmed.

Mr. Justice FAIRCHILD did not sit in this case.